No. 47,376

STATE OF KANSAS, *Appellee*, v. GALEN J. TORLINE, *Appellant*.

(527 P. 2d 994)

Opinion filed November 2, 1974.

*John J. Ambrosio*, of Topeka, argued the cause, and *Larry D. Ehrlich*, also of Topeka, was with him on the brief for the appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Vern Miller*, attorney general, and *Larry McClain*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Galen J. Torline was convicted by a jury of a terroristic threat (K. S. A. 1973 Supp. 21-3419) and of attempting to influence a judicial officer (K. S. A. 1973 Supp. 21-3815). He was

committed to the chief medical officer of the Larned State Security Hospital for a period of not less than one (1) year nor more than five (5) years on each count, the periods of detention to run concurrently and not to exceed five (5) years.

Defendant Torline's actions giving rise to the charges consisted of telephone communications with Stephen J. Kritikos who was at that time judge of the Shawnee County Magistrate Court. In 1969, the defendant had previously been convicted of the crime of battery of a child after a plea of guilty. Judge Kritikos was the presiding judge. The present charges grew out of a telephone call received by Judge Kritikos on August 6, 1971. The defendant wanted the judge to destroy certain records concerning his 1969 conviction. The file on the case had long since been closed.

As shown in the transcript Judge Kritikos testified as follows:

"Well I received a telephone call. The man identified himself as Torline and the conversation must have lasted close to an hour. I tried to reason with the man. He kept talking about the destruction of these court records, kept ordering me to destroy these records. I kept telling him that I had no power to do this. I kept telling him that in any event [they] wouldn't be instrumental in the destruction of his career, kept indicating that his whole life and career was destroyed. He kept telling me particularly referring to the psychiatric analysis made by Ross Pendergast and how that had been instrumental in destroying his career and kept ordering me to do this and he told me if I didn't destroy these records that he was going to have to kill a whole lot of people. His words were, 'I am going to have to massacre a lot of innocent people. I am going to have to kill a lot of people if you don't destroy these records.' As I said I would try to reason with him. This went on. We kept talking about other things. We kept talking about—one of the things he kept saying was I don't want to end up in Larned like my mother and then we got to a discussion about certain elements in the original crime. . . ."

The judge further testified he was terrified, that he was married, had small children, and that he was not only frightened for himself, his wife, his children but also for all of the other people who had been involved in the 1969 case.

An agent for the Kansas Bureau of Investigation testified that Judge Kritikos called him on the evening of August 6, 1971, and appeared to be excited, tense and anxious. The judge related to the agent what had been said in the telephone conversation between the judge and Torline. The agent stated the judge was scared and asked for help.

The above should constitute a sufficient factual basis to examine the points raised on appeal. The defendant-appellant attacks the constitutionality of K. S. A. 1973 Supp. 21-3815 which reads as follows:

"Attempting to influence a judicial officer is communicating with any judicial officer in relation to any matter which is or may be brought before such judge, magistrate, master or juror with intent improperly to influence such officer."

Defendant contends the statute is vague and ambiguous in that it fails to state the nature of the conduct prohibited. He claims the statute violates due process standards of the United States Constitution, Amendment VI, and of the Kansas Constitution, Bill of Rights, Section 10.

A criminal statute which either forbids or requires an act in vague terms that men of common intelligence must guess at its meaning and differ as to its application lacks the first essential of due process of law. A statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. (*State v. Blaser,* 138 Kan. 447, 26 P. 2d 593; *State v. Rogers,* 142 Kan. 841, 52 P. 2d 1185; *State v. Carr,* 151 Kan. 36, 98 P. 2d 393.) In creating an offense which was not a crime at common law the legislature must make the statute sufficiently certain to show what was intended to be prohibited and punished, otherwise it will be void for uncertainty. But reasonable certainty is all that is required, and liberal effect is always to be given to the legislative intent in view of the evil to be corrected. (*State v. Davidson,* 152 Kan. 460, 105 P. 2d 876; *State v. Hill,* 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750.) These rules have been recognized and applied in our more recent cases. See *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, at page 765, 408 P. 2d 877, where it was said the test to determine whether a criminal statute is void by reason of being vague and ambiguous is—does the language convey a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice? If the statute does it is not void for vagueness. See, also, *State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 78, 410 P. 2d 308, and *State v. Johnson,* 196 Kan. 208, 211, 410 P. 2d 423.

Defendant first asks what is meant in the statute by the term "with intent improperly to influence" a judicial officer and then asserts that men of common understanding would differ as to its meaning. We believe this term is subject to an objective definition.

The statute under consideration was enacted as part of the Kansas Criminal Code (L. 1969, ch. 180, § 21-3815). Part II of the act divides the kinds of conduct prohibited into various classifications. For instance Article 34 covers crimes against persons, Article 35 covers sex offenses, Article 36 covers crimes affecting family rela-

tionships and children, Article 37 covers crimes against property, and Article 38 covers crimes affecting governmental functions.

The judicial council comment following the statute indicates that 21-3815 and 21-3816, *supra,* were drawn from K. S. A. 21-712 and Wisconsin Criminal Code, 946.64. K. S. A. 21-712, now repealed, made it a crime to attempt to improperly influence a juror, arbitrator or referee in relation to any matter pending. Wisconsin Criminal Code, 946.64, prohibits communications with intent to influence any juror "in relation to any matter which is before him or which may be brought before him." These statutes are similar to a federal statute on the subject found in 18 U. S. C. A., § 1503, which superceded U. S. Rev. Stat. § 5399.

In *United States v. M'Leod,* 119 F. 416 (C. C. N. D. Ala. 1902), the federal court construed the federal statute and defined "improper influence of a judicial officer" as "endeavoring to influence, intimidate or impede any witness or officer in any court of the United States in the discharge of his duty."

In *Richardson v. State,* 43 Ga. App. 229, 158 S. E. 369, the Georgia court defined their statute prohibiting improper influence of a juror as follows:

". . . [A]ny effort to influence the juror's verdict or sympathy in any form, shape, or manner, other than that made in open court during the trial of the case by the introduction of evidence, or by the defendant's statement to the jury, or by the argument of counsel to the court and jury." (p. 230.)

These definitions are equally applicable to our statute. The phrase, with intent improperly to influence a judicial officer, as it appears in K. S. A. 1973 Supp. 21-3815, encompasses a broad range of possible conduct but is limited to conduct affecting a governmental function, the administration of justice by a judicial officer in relation to any matter which is or may be brought before him as a judicial officer. Given that type of limiting definition the proscribed conduct expressed in the above statute is not so vague and indefinite as to violate due process standards of the United States Constitution, Amendment VI, or the Kansas Constitution, Bill of Rights, Section 10.

Defendant next contends the evidence was insufficient to convict him under this statute since the 1969 case was not pending before the court at the time of the communication between him and Judge Kritikos. The statute recites the communication must be with the intent to improperly influence and must be "in relation to any mat-

ter which is or may be brought before such judge." We believe this point is well taken.

The court in *United States v. M'Leod,* supra, in construing the federal statute which contains similar wording to ours said:

". . . It is the discharge of duty which this clause seeks to protect. There can be no discharge of duty, to be influenced in any way, when there is no duty to be performed. Neither a duty discharged in the past, nor the motives which induced it, can, in the nature of things, legal or moral, be recalled or influenced in any wise by a subsequent assault, not contemplated by him who performed the duty at the time it was discharged. The assault here charged clearly does not fall within this clause." (119 F. 417.)

Where an assault or threat is directed against a judicial officer some months after the final termination of proceedings before such officer the one making the threat is not guilty of attempting to improperly influence a judicial officer. (*Pettibone v. United States,* 148 U. S. 197, 37 L. Ed. 419, 13 S. Ct. 542; *United States v. Scoratow,* 137 F. Supp. 620.) The holding in *Scoratow* was cited with approval in the more recent case of *United States v. Metcalf,* 435 F. 2d 754. It appears that the ultimate source of K. S. A. 1973 Supp. 21-3815 is 18 U. S. C. A., § 1503 and our statute appears to have been designed to achieve twin goals of protecting a judicial officer in specific proceedings and to prevent the miscarriage of justice in cases which are or may be brought before such judicial officer. Such protection is not required once a proceeding has been finally completed. Threats or assaults against judicial officers are adequately restricted by statutes of general applicability where such threats or attacks are not related to judicial proceedings.

Accordingly we hold the evidence was insufficient to establish the crime defined in K. S. A. 1973 Supp. 21-3815 and the judgment and sentence thereunder are set aside.

Defendant next contends the two counts in the information were duplicitous since they were based upon one transaction. He argues a fair trial was not afforded him because he was required to defend against two charges carved out of a single act. The law in this area has been adequately considered in *Wiebe v. Hudspeth,* 163 Kan. 30, 180 P. 2d 315; *Wagner v. Edmondson,* 178 Kan. 554, 290 P. 2d 98; *State v. Brown,* 181 Kan. 375, 312 P. 2d 832; *Lawton v. Hand,* 186 Kan. 385, 350 P. 2d 28; *State v. Gauger,* 200 Kan. 515, 438 P. 2d 455; *Coverly v. State,* 208 Kan. 670, 493 P. 2d 261; *Cox v. State,* 208 Kan. 190, 490 P. 2d 381; *State v. Campbell,* 210 Kan. 265, 500 P. 2d 21; and *State v. Cory,* 211 Kan. 528, 506 P. 2d 1115. The law is codified in K. S. A. 1973 Supp. 21-3107.

In *State v. Cory,* supra, the test as to duplicity is stated as follows:

". . . When two offenses are charged in separate counts of one information the test to be applied is not whether the facts actually proved at trial are used to support the conviction of two offenses, it is whether the necessary elements of proof of the one crime are included in the other." (p. 530.)

One may attempt to influence a judicial officer without the use of threat. One may make a terroristic threat without attempting to influence a judicial officer. Each count comprises an offense requiring proof of an element not requisite in the other. Here a single criminal transaction may well have constituted two separate offenses because the elements required to prove each were not the same or included in the other. The counts are not duplicitous.

Appellant next argues that the trial court erred in admitting in evidence the complaint from Case 69-CR-1077 (the 1969 case). Appellant contends this evidence to be prejudicial and immaterial in the present case, relying on K. S. A. 60-455.

K. S. A. 60-455 should be read and understood to mean that unless the evidence submitted is relevant to prove some other issue other than the propensity of a defendant to commit crime it should not be admitted. Justice Schroeder in *State v. Wright,* 194 Kan. 271, 274, 398 P. 2d 339, in reviewing the application of K. S. A. 60-455, stated:

"Exceptions, however, were recognized to the foregoing rule. It was held that evidence which legitimately tends to support the charge or show the intent with which it is committed is not to be excluded on the ground that it will prove other offenses. . . ." (p. 274.)

*State v. Davis,* 213 Kan. 54, 515 P. 2d 802, holds that relevancy is the primary test of admissibility of evidence of past crimes. But that even though relevant a trial judge must weigh the probative value of such evidence against the risk of undue prejudice. In the present case it appears clear that evidence of the complaint in case 69-CR-1077 was relevant to show appellant's motive and intent in threatening Judge Kritikos. The trial court in keeping within guidelines set out in *State v. Davis,* supra, *State v. Clingerman,* 213 Kan. 525, 516 P. 2d 1022, and *State v. Bly,* 215 Kan. 168, 523 P. 2d 397, limited the jury's use of the prior complaint solely to establishing the intent and motive of defendant when he called the judge.

Appellant further contends that prior crimes must be similar to a pending charge before evidence of them may be admitted under K. S. A. 60-455. *State v. Jenkins,* 203 Kan. 354, 454 P. 2d 496, states that the similarity of the two offenses may make the prior conviction

relevant. But *Jenkins* also recognizes that similarity is not required if evidence of the prior conviction is relevant and has probative value for some purpose enumerated in K. S. A. 60-455. In the present case the prior complaint against defendant was relevant to show motive and intent.

Appellant finally contends there did not exist substantial competent evidence to convict appellant of a terroristic threat. We disagree. The rule in a criminal case is that upon a review of the sufficiency of evidence the supreme court will examine the record to determine whether from all the facts and circumstances the jury could reasonably have drawn an inference of guilt. *State v. O'Neal,* 204 Kan. 226, 461 P. 2d 801; *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93.

*State v. Kelly,* 210 Kan. 192, 499 P. 2d 1040, states:

"Before a verdict of guilty, which has been approved by the district court, may be set aside because of insufficient evidence, it must clearly be shown that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the district court." (Syl. ¶ 3.)

It appears from the record that there is a sound basis in the evidence for a reasonable inference that Galen J. Torline telephoned Judge Kritikos with the purpose and intent of making a terroristic threat. (See *State v. Gunzelman,* 210 Kan. 481, 502 P. 2d 705.)

Accordingly the judgment of conviction and sentence is affirmed as to the charge of terroristic threat under K. S. A. 1973 Supp. 21-3419 and reversed on the charge of attempting to improperly influence a judicial officer under K. S. A. 1973 Supp. 21-3815.