No. 51,747

ANTHONY J. CARDARELLA d/b/a TIGER'S RECORDS, *Appellant,* v. CITY OF OVERLAND PARK, KANSAS, A municipal corporation, and BEN M. SYKES, Mayor of the City of Overland Park, and RICHARD K. LANDTISER, JANET LEICK, EDWIN C. EILERT, W. JACK SANDERS, DOUGLAS L. SMITH, F. R. EDGINGTON, DENIS STEWART, BYRON C. LOUDON, WAYNE C. BYRD, JERRY OVERSTREET, Comprising the City Council of the City of Overland Park, Kansas, and MYRON E. SCAFE, Chief of Police of the City of Overland Park, Kansas, *Appellees.*

(620 P.2d 1122)

Opinion filed December 6, 1980.

*Mark R. Singer,* of Romain & Singer, Chartered, of Overland Park, argued the cause and was on the brief for the appellant.

*Neil R. Shortlidge,* assistant city attorney, of Overland Park, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is a declaratory judgment action wherein the plaintiff challenges the constitutionality of an ordinance of the City of Overland Park, which places certain restrictions on merchants selling or displaying items identified with drug usage. More particularly, the ordinance prohibits sale or display of such items on premises open to minors. The trial court upheld the ordinance and plaintiff appeals therefrom.

Plaintiff is the operator of a business establishment which is directly affected by the ordinance. Plaintiff attacks the ordinance on the grounds that it is (1) overbroad, (2) vague, and (3) an infringement on the right of commercial speech.

In the interest of brevity, only those portions of the ordinance

necessary for the determination of the issues are reproduced herein.

"ORDINANCE NO. RD-1048

. . . .

"WHEREAS, the Governing Body of the City of Overland Park, Kansas, has determined and hereby finds that a problem exists within its territorial limits involving the exposure of children of elementary, junior high school and high school age to the use of drugs and controlled substances other than as authorized by law; and

"WHEREAS, the Governing Body of the City of Overland Park has determined and hereby finds that the display and availability for sale of certain instruments hereinafter enumerated and simulated drugs and simulated controlled substances hereinafter defined contribute to the usage of drugs and controlled substances by the youth of the community by creating an atmosphere of apparent condonation by the community; and

"WHEREAS, the promotion and sale of products containing substances which may be harmless and inert in themselves, but which are packaged or designed to simulate controlled substances or drugs, are harmful in that they promote and encourage entry into the drug culture and foster respectability for drug use and abuse; and

"WHEREAS, the Governing Body of the City of Overland Park deems it to be in the best interests of the health, safety and welfare of its youth to make the use and abuse of drugs and controlled substances difficult by limiting the availability of necessary instruments within the City:

"NOW, THEREFORE, BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF OVERLAND PARK, KANSAS, that the following amendments and additions be made to the Overland Park Municipal Code, to wit:

SECTION 1. Overland Park Municipal Code Section 11.56.130 is hereby amended to read as follows:

"11.56.130. Definitions.

As used in this article:

"A. 'Controlled substance' means any drug or substance included in Schedules I through V of the Uniform Controlled Substances Act found in Chapter 65, Article 41 of the Kansas Statutes Annotated.

. . . .

"P. 'Instrument' means a device designed for use, or intended for use in ingesting, smoking, administering or preparing marijuana, cocaine, phencycledine, opium or any derivative thereof, or any other controlled substance.

"For purposes of this subsection the phrase 'intended for use' shall refer to the intent of the person selling, offering to sell, dispensing, giving away or displaying the instrument herein defined.

"In determining whether an item constitutes an 'instrument,' a court may consider the following:

"(a)  Whether a person or business establishment charged with violating this section is a licensed distributor or dealer of tobacco products under Chapter 79, Article 33 of the Kansas Statutes Annotated.

"(b)  Expert testimony as to the principal use of the devices, articles, or contrivances claimed to be instruments.

"(c)  Evidence concerning the total business of a person or business estab-

lishment and the type of devices, articles, contrivances or items involved in the business.

"(d) National and local advertising concerning the use of the devices, articles, or contrivances claimed to be instruments.

"(e) Evidence of advertising concerning the nature of the business establishment.

"Q. 'Minor' shall mean any person who has not attained 18 years of age.

"R. 'Premises open to minors' means any business establishment which sells its wares or merchandise to minors or which permits minors to enter into its place of business.

"S. 'Simulated drugs' and 'simulated controlled substances' are any products which identify themselves by using a common name or slang term associated with a controlled substance or indicate by label or accompanying promotional material that the product simulates the effect of a controlled substance or drug.

"T. 'Place of display' means any museum, library, school or other similar public place upon which business is not transacted for a profit.

. . . .

"W. 'Premises' means a business establishment and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of patrons.

"SECTION 2. Overland Park Municipal Code Section 11.56.185 is hereby added and shall read as follows:

"11.56.185 Control of instruments used for inhaling or ingestion of controlled substances or drugs and control of simulated drugs and simulated controlled substances.

"A. Sale and display prohibited. It shall be unlawful for any person, firm or corporation to sell, offer to sell, dispense, give away or display any instrument or simulated controlled substance or simulated drug in or upon any premises which: (a) are premises open to minors, unless the instruments, simulated controlled substances or simulated drugs are kept in such part of the premises that is not open to view by minors or to which minors do not have access; or (b) are in close proximity to a school. Provided, however, that display of any such items at a place of display for educational or scientific purposes shall not be unlawful."

The general rules relative to determination of the constitutionality of statutes were set forth as follows in *City of Baxter Springs v. Bryant,* 226 Kan. 383, Syl. ¶¶ 1-5, 598 P.2d 1051 (1979):

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution."

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt."

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, other-

wise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere."

"Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose."

We turn now to the specific issues raised on appeal. We will first consider whether the ordinance is overbroad.

The parties agree a legitimate goal of the defendant City is to discourage drug usage among its youth. Plaintiff argues that the means chosen by the City of Overland Park to address the drug abuse problem is unduly oppressive by penalizing legitimate business activity without demonstrating that the limitations on the sale and display of the "paraphernalia" items will have the intended effect of discouraging drug use.

In *Delight Wholesale Co. v. City of Prairie Village,* 208 Kan. 246, Syl. ¶ 2, 491 P.2d 910 (1971), this court held:

"The police power is wide in scope and gives the governmental body broad powers to enact laws to promote the health, morals, security, and welfare of the people. Broad discretion is vested in the governing body to determine for itself what is deleterious to the health or morals, or which is inimical to public welfare. However, the governing body does not possess plenary power to pass legislation that is arbitrary, oppressive, and capricious, and which bears no substantial relationship to the public safety and welfare."

The guarantee of due process demands only that the statute shall not be unreasonable, arbitrary, or capricious and that the means selected shall have a real and substantial relation to the objective sought to be obtained. *Nebbia v. New York,* 291 U.S. 502, 78 L.Ed. 940, 54 S.Ct. 505 (1934).

Plaintiff, relying on *Nebbia,* contends there is no evidence that the ordinance herein, by restricting "head shops" as they are commonly referred to, will achieve the desired purpose—discouraging drug usage among the youth of the city.

In upholding the ordinance against the challenge of overbroadness, the trial court reasoned:

"Overland Park did not enact the ordinance in a vacuum. The city held public hearings on the proposed ordinance and elicited testimony that the easy avail-

ability of the paraphernalia items addressed by the ordinance represents a potential harm to a significant number of youths. The display and sale of these items in the manner prohibited by the ordinance was thought to create 'an atmosphere of apparent condonation by the community' toward the use of drugs and controlled substances [Ord. No. RD-1048]. In essence, the ordinance was written to force minors out of the 'head shops', and thus eliminate the particular evil posed by commercially merchandising paraphernalia in their presence.

"The plaintiff points out that there was no statistical evidence that forbidding access of minors to these shops will achieve the intended effect. But the law does not require scientific studies to support a legislative decision. *Ginsberg v. New York*, 390 U.S. 629, 641-643, 20 L.Ed.2d 195, 88 S.Ct. 1274 (1968). It should also be pointed out that the ordinance does not prohibit the sale of paraphernalia items to minors outside the premises of the 'head shop'. Hence, an itinerant peddler of such merchandise may hawk his goods outside the schoolhouse door without violating this ordinance. Nor does the ordinance prohibit the possession of such items by minors or their gift or display anywhere outside the 'premises' as defined in the ordinance. Furthermore, as the plaintiff points out, the purchase and use of drugs by the youth of the community is not dependent upon the availability of the paraphernalia sold in plaintiff's store. Thus, it may be questioned whether this ordinance will have a significant impact on drug use in Overland Park. 'But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it'. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 99 L.Ed. 563, 75 S.Ct. 461 (1955).

"Although the ordinance in question may have a substantial impact upon the operations of the 'head shop' trade, it does not foreclose them from doing business entirely. Moreover, the legislative judgment that minors should not be exposed to the sale or display of drug related paraphernalia and that the present ordinance is a reasonable method of safeguarding the public interest by discouraging drug use should be accorded deference. Thus, this court must find, as a whole, the restrictions imposed by ordinance RD-1048 bear a reasonable relationship to a valid exercise of the police power granted to municipalities under the Home Rule Amendment."

We agree and adopt the aforecited portion of the trial court's memorandum opinion.

We will next consider whether certain provisions of the ordinance are impermissibly vague.

The trial court carefully and ably analyzed this issue and concluded the ordinance was not unconstitutionally vague. We agree and adopt the trial court's memorandum opinion relative to this issue, as follows:

"Due process requires that criminal ordinances be reasonably definite as to the persons and conduct within their scope. In determining whether an ordinance is void-for-vagueness two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement.

"In Kansas the test to determine whether a criminal statute or ordinance is vague or indefinite is whether its language conveys 'a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice'. *City of Altamont v. Finkle,* 224 Kan. 221, 223, 579 P.2d 712 (1978), as cited in *City of Baxter Springs v. Bryant,* supra at 393.

"An ordinance that either forbids or requires an act in vague terms that men of common intelligence must guess at its meaning and differ as to its application lacks the first essential of due process of law. See e.g., *Connally v. General Const. Co.,* 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126 (1926); and *State v. Hill,* 189 Kan. 403, 369 P.2d 365 (1962). Furthermore, when a statute creates a new offense it must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. *State v. Carr,* 151 Kan. 36, 98 P.2d 393 (1940). Finally, in creating an offense that is not a crime at common law, the legislature must make the statute or ordinance sufficiently certain to show what was intended to be prohibited and punished, otherwise it will be void for uncertainty. *State v. Davidson,* 152 Kan. 460, 105 P.2d 876 (1940). These rules have been recognized and applied in several recent cases. *State v. Torline,* 215 Kan. 539, 527 P.2d 994 (1974); *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705 (1972).

"Although both Kansas and United States Supreme Court cases have said that the law must be clear to the 'average man' or to 'men of common intelligence,' the rule should be more properly qualified to require fair warning to those potentially subject to it. For example, if a penal statute is addressed to those in a particular trade or business, the terms used in the statute should be sufficiently defined to enable one in that trade or business to apply it correctly. The Supreme Court recognized this application of the rule in *Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 69 L.Ed. 402, 45 S.Ct. 141 (1925), where the court upheld the constitutionality of a law prohibiting the sale of falsely labeled kosher meats. The court responded to the argument that 'kosher' was too indefinite a standard by focusing on the intent requirement of the statute and by finding that 'kosher' has a meaning well enough defined to enable one engaged in the trade to correctly apply it. . . .' 266 U.S. at 502. Likewise, in *United States v. Vuitch,* 402 U.S. 62, 28 L.Ed.2d 601, 91 S.Ct. 1294 (1971), the court rejected the contention that an abortion statute was vague because of the 'necessary for the preservation of the mother's life or health' exception for doctors. The court observed that 'whether a particular operation is necessary for a patient's physical or mental health is a judgment that physicians are obviously called upon to make routinely whenever surgery is considered.' 402 U.S. at 72.

"In the present case it is sufficient to say that the ordinance meets constitutional muster if a person of common intelligence engaged in the business of selling the type of merchandise regulated by the ordinance could examine the ordinance and not be confused by its requirements. The plaintiff, of course, argues that the two types of goods subject to the sale or display prohibitions, 'instruments' and 'simulated drugs', are so vaguely defined as to provide no warning of what specific items are restricted. A reading of the ordinance indicates that this is not the case. It is this court's conclusion that the ordinance's prohibitions are suffi-

ciently clear to provide any person of common intelligence the fair warning of what is forbidden demanded by the constitution.[2]

"The plaintiff first attacks the definition of 'instruments' provided in the ordinance. The definition reads 'a device designed for use or intended for use in ingesting, smoking, administering or preparing . . . any . . . controlled substance.' [Ord. RD-1048, § 11.56.130 (P)]. The ordinance does not define 'device' or 'designed for use' and, according to the plaintiff, that omission would make it impossible for any person to know with certainty or consistency what could be sold or displayed. The simple answer is that under the ordinance any device *intended by the seller* for use in 'ingesting, smoking, administering or preparing . . . controlled substance[s]' is prohibited. By focusing on the intent of the seller, the ordinance avoids many of the vagueness problems faced by the ordinance in *Riddle v. Clack,* supra, [Case No. CA-3-77-0525-D (N.D. Tex. 1977)] and many of the hypotheticals raised by the plaintiff in his arguments to this court.[3] The indefiniteness of just referring to the intent of the seller is avoided by the enumeration of five criteria that lend themselves to a determination of what a particular item is to be used for and what the seller 'intends' their use to be. [Ord. RD-1048, § 11.56.130 (P) (a) (e)].

"Admittedly there may be a gray area where a proper determination of the intent of the seller cannot be made even though the product being sold is capable of being put to a drug related use. For example, assume hypothetically that the plaintiff's store in this case sells only records and unmarked rolling papers. Because rolling papers have both legitimate and non-legitimate uses, the intent of the seller becomes the key element of a violation. That intent must be proved by either direct testimony on the point or inferred using evidence of the type enumerated in § 11.56.130 (P) (a) (e) of the ordinance. Where, as in this hypothetical case, the advertising of the store and the promotional materials accompanying the product do not advocate illegal use or indicate that the product can be used with controlled substances, it would be very difficult if not impossible to prove the intent of the seller without direct testimony. Thus, the prosecution in this hypothetical would likely be left with only testimony indicating the legitimate and illegitimate uses of rolling papers, and that is not enough to satisfy the ordinance's intent requirement.

"This gray area is erased when the products restricted to minors are examined in terms of a pattern of merchandising. When the hypothetical unmarked rolling papers are sold or displayed in conjunction with other merchandise identified with drug use the problems associated with inferring intent to the seller lessen. And when the advertising and other promotional material concerning the store and its merchandise clearly indicate a drug orientation it becomes very fair to infer an intent that those products be used in a drug related way to the seller. The

"2 Because of the ordinance's narrow application to a 'business establishment' that operates from 'premises', the due process requirement of the United States Constitution would be met by an ordinance imparting fair warning to a person in that trade or business. For the purposes of this decision, however, it is the opinion of this court that the ordinance meets the stricter 'any person of common intelligence' standard."

"3 The plaintiff has suggested that a literal reading of the ordinance would prevent a 17-year old from buying his father a pipe for Christmas, a 14-year old art student from buying pipe cleaners for an art project and a 16-year old boy from buying a razor to shave. Plaintiff's Brief at 21. While such items can be converted to drug related uses, the ordinance's definition of instruments as limited by the intent of the seller effectively eliminates from coverage of the ordinance the sale of items that have legitimate non-drug related uses and that are purchased for those legitimate uses."

factors enumerated in the ordinance to infer intent clearly indicate that where items that have both legitimate and illegitimate uses are included, it is the merchandising of those items in a manner linked with drug use that provides the necessary indicia of intent that converts an otherwise lawful sale into an unlawful one. These factors are clearly set out and provide fair warning to the merchant who seeks to judge whether a particular device he offers for sale will be deemed an 'instrument' under the terms of the statute.[4]

"Finally, the plaintiff attacks the prohibition on the sale or display of products identified as 'simulated drugs' or 'simulated controlled substances'. This provision in the ordinance is not tied to the intent of the seller or to the list of factors that are considered when determining whether a device is an instrument. Rather, they are defined as 'products which identify themselves by using a common name or slang term associated with a controlled substance *or* indicate by label or accompanying promotional material that the product simulates the effect of a controlled substance or drug.' Ord. RD-1048, § 11.56.130 (S). (Emphasis added) The plaintiff points out that the literal language of the ordinance would prohibit the presence of a minor on the premises where a soft drink commonly called 'coke' is sold. While this may be true, it is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.' *Holy Trinity Church v. United States,* 143 U.S. 457, 459, 36 L.Ed. 226 (1892) and *Intoxicating Liquor Cases,* 25 Kan. 751, 763, 37 Am. Rep. 284 (1881). Thus the literal language of the ordinance should not be read as regulating the sale of products not identified with drug related activities.

"Nevertheless, the plaintiff has a good point in his argument that the definition of 'simulated drug' as a product identified 'by using a common named or slang term associated' with controlled substance is indefinite when standing alone. Perhaps the product might have been better defined if the definition had read in the conjunctive 'and' instead of the disjunctive 'or'. In that case the common name or slang term would have to be accompanied by a label or promotional material that indicated a simulated effect of a drug or controlled substance. But this is not a defect that would require the regulation on simulated drugs be stricken from the ordinance. Even the terms of a penal ordinance should be read *in pari materia* with the other provisions of the ordinance in order to determine the precise scope of the conduct prohibited. Clearly, the words in a statute or ordinance must be construed in light of their context and the purpose of the enactment. *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 466, 183 P.2d 234 (1947). Here, a 'simulated drug' must be interpreted to mean, as a matter of common sense, those products offered by a merchant that purport to simulate the effect of a controlled substance or otherwise resemble and are identified, albeit by slang terms, as a controlled substance. Any person of common intelligence reading the ordinance as a whole in relation specifically to the provision on 'simulated drugs' could reach this conclusion without any mental gymnastics and would receive fair warning as to the conduct regulated.

"The final aspect of plaintiff's void-for-vagueness argument is that the ordi-

"4 The plaintiff also objects to the ordinance's definition of an 'instrument' as a 'device designed for use. . .' contending that no definition of 'device or designed for use' is offered However, the five criteria used in determining intent also apply to a determination that a device is 'designed for use' and this provides a satisfactory standard to determine whether a particular item is 'designed for use' within the meaning of the ordinance."

nance creates the possibility of arbitrary and discriminatory enforcement. An ordinance must provide adequate guidelines for and constraints upon those who apply it; judges, juries, and law enforcement officers must have some legally fixed standards by which they may decide what is prohibited and what is not in each particular case. *Smith v. Goguen,* 415 U.S. 566, 39 L.Ed.2d 605, 94 S.Ct. 1242 (1974); and *Papachristou v. City of Jacksonville,* 405 U.S. 156, 31 L.Ed.2d 110, 92 S.Ct. 839 (1972). In the present case the challenged ordinance was very narrowly drawn. It applies only to commercial establishments and to fairly well defined products. It does not 'cast a large net' like the imprecise terms of the vagrancy ordinance in *Papachristou* nor does it require the type of vague and subjective judgments similar to the required determination of what constituted 'contemptuous' treatment of the flag found in *Smith v. Goguen,* supra. The challenged ordinance does provide the constitutionally required fair warning of what is prohibited and adequate standards by which that conduct may be measured."

The only addition needed is reference to a case decided by this court subsequent to the opinion of the trial court. In the case of *In re Brooks,* 228 Kan. 541, 618 P.2d 814 (1980), this court recognized: (1) Upon challenges for vagueness greater leeway is afforded statutes regulating business than those proscribing criminal conduct; and (2) a statute is not to be struck down only because marginal cases could be put where doubts might arise.

The final issue on appeal is whether prohibiting the display of the restricted items violates any First Amendment rights of commercial speech.

Commercial advertising has been held entitled to at least some degree of protection under the First Amendment, although the extent of that protection is undefined. *Va. Pharmacy Bd. v. Va. Consumer Council,* 425 U.S. 748, 48 L.Ed.2d 346, 96 S.Ct. 1817 (1976). In *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 56 L.Ed.2d 444, 98 S.Ct. 1912 (1978), the United States Supreme Court held:

"Expression concerning purely commercial transactions has come within the ambit of the Amendment's protection only recently. In rejecting the notion that such speech 'is wholly outside the protection of the First Amendment,' *Virginia Pharmacy, supra,* at 761, we were careful not to hold 'that it is wholly undifferentiable from other forms' of speech. 425 U.S., at 771 n. 24. We have not discarded the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. *Ibid.* To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of

First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." pp. 455-456.

Before proceeding further we must consider whether the merchant's display of the restricted items on his premises is commercial speech. No authority is cited by the parties relative to this question.

The ordinance prohibits the display of the restricted items in or upon any premises open to minors unless the same are kept in a part of the premises that is not open to view by minors or to which minors do not have access. Clearly, display is used in its ordinary sense, which connotes an exhibiting or showing of something. Webster's Third New International Dictionary 654. This is in harmony with § 11.56.130 (T) of Ord. RD-1048, which provides:

" 'Place of display' means any museum, library, school or other similar public place upon which business is not transacted for a profit."

as well as with § 11.56.185 (A) of Ord. RD-1048, which states:

"Provided, however, that display of any such items at a place of display for educational or scientific purposes shall not be unlawful."

This is not commercial advertising—only the physical placement of items on the business premises is involved. This is not commercial speech. The only case dealing with this issue that has been located is *Tobacco Road v. City of Novi,* 490 F. Supp. 537 (E.D. Mich. 1980), which reaches this same result at 544-545. We must conclude the ordinance does not violate any First Amendment right of commercial speech.

Before closing, we note that the ordinance in question is far less restrictive than the "Model Drug Paraphernalia Act" drafted by the Drug Enforcement Administration of the United States Department of Justice. The act has been adopted by a number of cities and states. The model act in effect outlaws "head shops." The model act has been substantially upheld wherever challenged. For example, see *Record Revolution No. 6 v. City of Parma,* 492 F. Supp. 1157 (N.D. Ohio 1980), and *The Casbah, Inc. v. Thone,* No. 80-0-271 (D. Neb. 1980).

We hold that Ordinance RD-1048 is constitutional as to all of its challenged aspects.

The judgment is affirmed.