(314 P.3d 890)
No. 107,660

STATE OF KANSAS, *Appellee*, v. ERIC WAYNE SRACK, *Appellant*.

762

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Charles Ault-Duell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., PIERRON, J., and KNUDSON, S.J.

KNUDSON, J.: On December 22, 2010, an undercover investigator of the Salina Police Department bought six bags of herbal potpourri from Eric Wayne Srack containing a synthetic cannabinoid known as JWH-081. As a result, Srack was charged and convicted of a felony for distribution of a controlled substance analog. The State's theory of the case was that JWH-081 is an analog of JWH-018, a schedule I hallucinogenic drug. On appeal, Srack raises the following issues: (1) Whether the statutory definition of a controlled substance analog is unconstitutionally vague, (2) whether the State presented sufficient evidence to support the conviction, and (3) whether the district court erred in excluding certain evidence at trial.

We conclude the statute is not void for vagueness, the evidence was sufficient to support Srack's conviction, and there was no evidentiary error. Accordingly, the district court's judgment is affirmed.

*Criminal Statutes*

Srack was charged with distribution of a controlled substances analog. K.S.A. 2010 Supp. 21-36a05(a)(4) states in material part: "(a) It shall be unlawful for any person to . . . distribute . . . any of the following controlled substances or controlled substance analogs thereof: (4) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105."

JWH-018 is a prohibited hallucinogenic substance under K.S.A. 2010 Supp. 65-4105(d). Thus, the controlling legal issue is whether

JWH-081 is an analog thereof. K.S.A. 2010 Supp. 21-36a01(b), the controlled substance analog statute, states in material part:

"(b)(1) 'Controlled substance analog' means a substance that is intended for human consumption, and:

(A) The chemical structure of which is *substantially similar* to the chemical structure of a controlled substance listed in or added to the schedules designated in K.S.A. 65-4105 or 65-4507, and amendments thereto;

(B) which has a . . . hallucinogenic effect on the central nervous system *substantially similar* to the . . . hallucinogenic effect on the central nervous system of a controlled substance included in the schedules designated in K.S.A. 65-4105 or 65-4107, and amendments thereto; *or*

(C) with respect to a particular individual, which the individual represents or intends to have a . . . hallucinogenic effect on the central nervous system *substantially similar* to the . . . hallucinogenic effect on the central nervous system of a controlled substance included in the schedules designated in K.S.A. 65-4105 or 65-4107, and amendments thereto." (Emphasis added.)

In this litigation, the parties interpret the requirements of the above statute to be read in the conjunctive. Although there has been some debate under the comparable federal controlled substance analog statute as to an appropriate interpretation, we agree with the courts that have read the requirements in the conjunctive. See *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002). Consequently, there is agreement between the parties, and we concur, that to convict Srack of the crime, under the charging document and the jury instructions, the State was required to prove beyond a reasonable doubt that (1) the chemical structure of JWH-081 is *substantially similar* to the chemical structure of JWH-018 and (2) JWH-081 has a hallucinogenic effect on the central nervous system *substantially similar* to the hallucinogenic effect of JWH-018.

Before continuing with discussion and analysis, we pause to observe the State does not contend subsection (C) of K.S.A. 2010 Supp. 21-36a01(b)(1) was applicable to the prosecution of Srack. We would simply note in passing that it would appear subsections (B) and (C) should be read in the disjunctive. With that clarification, we will proceed with discussion of the issues raised on appeal.

*Trial Proceedings*

At trial, Jessica Kaiser, a forensic chemist for the Kansas Bureau of Investigation (KBI), testified that she tested the potpourri sold by Srack to the undercover agent. The samples she tested contained JWH-081. Kaiser compared the chemical structure of JWH-081 to the chemical structure of JWH-018. She told the jury one of the compounds contained a methoxy group, which is composed of carbon and oxygen, that the other did not, but otherwise the structures were identical. Based on her opinion and training, Kaiser testified the two compounds were structurally similar, calling the two "structural analogs."

Sedgwick County Regional Forensic Science Center Director Timothy Rohrig testified that Professor John Huffman synthesized JWH compounds at Clemson University in the late 1990's. Huffman looked at the effect these compounds had on the cannabinoid receptor, where tetrahydrocannabinol (THC), the active ingredient of marijuana, acts. A couple hundred JWH compounds were synthesized to see if they could take the beneficial aspects of THC, such as pain relief, and eliminate the negative effects so that it could be marketed for medicinal purposes. Rohrig testified JWH-018 and JWH-081 were structural analogs, identical except for a methoxy group in JWH-081.

In regard to the effects of JWH-018, Rohrig testified the compound binds with the CB-1 receptor, which is a cannabinoid receptor in the brain, to produce effects such as increase in heart rate, hallucinations, dry mouth, and others. Rohrig admitted that limited studies of JWH-018 existed, and many of those were anecdotal. Rohrig then asserted JWH-081 had essentially the same effects as JWH-018 and JWH-081 might even be more potent. JWH-081 also bound with the CB-1 receptor to produce similar effects and a "marijuana like high." JWH-081 had a 10 times stronger binding affinity to the CB-1 receptor as compared to JWH-018; in general with JWH compounds, the stronger the binding affinity, the stronger the effect of the compound. However, Rohrig was not aware of any studies of the effects of JWH-081 done on humans due to the dangers of the drugs. Rohrig agreed

with the prosecution's assessment that JWH-081 and JWH-018 had "similar effects" and were "chemically structurally similar to each other."

After the State rested its case and the district court denied Srack's motion for acquittal, the defense called Jahan Marcu, a graduate Ph.D. student at Temple University School of Medicine whose research thesis studied the structure and function of the CB-1 receptor, to counter Rohrig's testimony. Marcu stated his work dealt almost exclusively with synthetic cannabinoids, including JWH-018.

Marcu distinguished between structural analogs and functional analogs. A structural analog refers to two or more compounds whose structures look similar. A functional analog refers to two or more compounds whose structures do not appear similar but which behave "exactly the same." Marcu did not know of any studies directly comparing JWH-018 and JWH-081. However, Marcu noted that binding affinity was only a first step in determining a compound's effect. Just as many keys may actually fit in a lock but only the right key will turn it, Marcu stated that many compounds could bind to a receptor but only some of them would activate the receptor. Thus, while JWH-081 might have a stronger binding affinity than JWH-018, there was no data to show that JWH-081 activated the receptor, making it "potent."

Marcu agreed that the only difference between JWH-018 and JWH-081 was the addition of a methoxy group. However, he noted this small difference could greatly affect the functionality of the compound. As an example, Marcu pointed out that the only difference between ethanol, which is a common ingredient in alcoholic beverages, and methanol, which can cause blindness and death if consumed, is a methoxy group. Marcu claimed the difference between a narcotic and a medicine can be a mere structural change that does not affect the chemical composition at all. Therefore, Marcu rejected the idea that JWH-081 and JWH-018 are functional analogs; the only data to compare them was the binding affinity. However, on cross-examination, Marcu did concede that the two compounds were structural analogs. Further, his reason

for rejecting the idea that the two compounds were functional analogs was due to lack of data on JWH-081.

Following Marcu's testimony, Srack's attorney requested that the district court allow into evidence a letter sent by the Saline County Attorney to the State Board of Pharmacy requesting JWH-081 be named a scheduled controlled substance. In the letter, the county attorney indicated that the charges against Srack could be dropped if JWH-081 was not so named. After a proffer was made, the district court held the evidence was inadmissible.

The jury found Srack guilty of three counts of distribution of JWH-081, an analog of JWH-018. Srack moved for a judgment of acquittal, claiming the evidence was insufficient to sustain a conviction asserting, among other things, that the State failed to prove JWH-081 was an analog of JWH-018. The district court determined the State had presented sufficient evidence of each essential element of the crime and denied the motion. Srack also contended in a posttrial motion that his convictions were multiplicitous because he was charged with three counts of the same offense, even though the counts arose from the same transaction. The district court agreed that even though Pratt received different packets of potpourri, there was only one transaction. Because each count arose from the violation of the same statute, the district court held the three counts were multiplicitous and merged them into one count, dismissing the other two counts. The district court imposed a sentence of 30 months' imprisonment to be served in the custody of the Secretary of Corrections. Srack has filed a timely appeal.

*Void for Vagueness*

Srack contends he has been denied due process of law under the Fourteenth Amendment to the United States Constitution and §18 of the Kansas Constitution Bill of Rights because the phrase "substantially similar" of the analog statute is unconstitutionally vague on the facts at hand. We review a constitutional challenge to the statute de novo. See *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013).

To guarantee constitutional due process of law, a criminal statute must " 'convey[] a sufficiently definite warning as to the conduct

proscribed when measured by common understanding and practice.' " *State v. Richardson,* 289 Kan. 118, 124, 209 P.3d 696 (2009) (quoting *State v. Dunn,* 233 Kan. 411, 418, 662 P.2d 1286 [1983]).The need for clarity and prevention of arbitrary and discriminatory enforcement in criminal statutes is heightened because criminal violations result in the loss of personal liberty. Thus, the determinative question in deciding whether a statute is unconstitutionally vague is whether a person of ordinary intelligence would understand what conduct is prohibited by the statutory language at issue. *Richardson,* 289 Kan. at 125.

Srack supports his void for vagueness argument by emphasizing the testimony of his expert witness that not enough studies had been done to determine whether the effects of JWH-081 were substantially similar to those of JWH-018. Without sufficient data on the subject among experts, Srack contends that ordinary persons could not be expected to know whether a compound will be considered substantially similar to a scheduled controlled substance. As a result, a person of common intelligence could not know whether his or her actions were criminal, making the statute unconstitutional. Srack claims the district court therefore erred in rejecting his motion to dismiss and entering a judgment of conviction.

The State argues the fact JWH-081 and JWH-018 are substantially similar chemical structures can be "objectively determined." As shown in the diagrams presented to the jury, the only difference between the two compounds is a single methoxy group. Both experts also testified that the methoxy group was the only structural difference between the two compounds, even though the experts disagreed on the effect that methoxy group could have. The State claims there is no danger of arbitrary application of this standard because the chemical structures can be directly compared.

As to whether the substances have substantially similar effects as a scheduled hallucinogen, the State observes that the experts at trial testified that JWH-081 and JWH-018 had a binding affinity with the CB-1 receptor. An expert witness for the State testified JWH-081 caused the same "highs" consistent with marijuana use. The State acknowledged Srack's expert disagreed that JWH-081

had been proven to cause any of these effects. Even though the hallucinogenic effect of JWH-081 was disputed, the State argues the standard itself is not subject to arbitrary application. While a jury was required to evaluate conflicting expert testimony and render a verdict, the State claims this process is no different than any other statute containing an adjective or adverb. Accordingly, the State claims the substantially similar standard is "sufficiently definite and objective to pass constitutional muster."

Turning to caselaw, we note the lack of controlling precedence construing the analog statute. The most insightful Kansas case is *Cardarella v. City of Overland Park*, 228 Kan. 698, 620 P.2d 1122 (1980). In *Cardarella*, a defendant challenged an Overland Park, Kansas, municipal ordinance which prohibited the distribution of "simulated" drugs and controlled substances which the ordinance defined as " 'any products which identify themselves by using a common name or slang term associated with a controlled substance or indicate by label or accompanying promotional material that the product simulates the effect of a controlled substance or drug.' " 228 Kan. at 700.

While the Kansas Supreme Court recognized the ordinance was indefinite, it held the defect did not require the section of the ordinance be stricken. Instead, the court recognized that statutes regulating businesses (case involved "head shops" selling simulated drugs and drug paraphernalia) are given greater leeway in void for vagueness challenges. 228 Kan. at 706. The court held the ordinance should be construed in context. 228 Kan. at 705 (citing *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation*, 163 Kan. 458, 466, 183 P.2d 234 [1947]). Based on this construction, the court held " '[a]ny person of common intelligence reading the ordinance as a whole in relation specifically to the provision on "simulated drugs" could reach this conclusion without any mental gymnastics and would receive fair warning as to the conduct regulated.' " *Cardarella*, 228 Kan. at 705. Although *Cardarella* iterates the legal framework to address a specific void for vagueness issue, it does not provide controlling authority to resolve the constitutional challenge presented by Srack in this appeal. Fortunately, however, the Kansas definition of a controlled substance analog is

identical to the definition in 21 U.S.C. § 802(32) (2006), under which there have been void for vagueness challenges. See K.S.A. 2010 Supp. 21-36a01(b)(1).

*United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990), in addressing the appellant's contention that the federal analogue statute was unconstitutionally vague, held:

"Despite Granberry contention to the contrary, the term 'controlled substance analogue' in [the statute] is clearly and specifically defined, in terms readily comprehensible to the ordinary reader. It provides adequate notice of what conduct is prohibited. The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if 1) they are substantially similar chemically to drugs that are on those schedules, 2) if they produce similar effects on the central nervous system as drugs that are on those schedules, or 3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules. There is nothing vague about the statute."

The Eleventh Circuit Court of Appeals has cited *Granberry* with approval in *United States v. Carlson*, 87 F.3d 440, 443 (11th Cir. 1996). In *Carlson*, the defendants argued that the definition of a controlled substance analog was unconstitutionally vague as applied to 3,4-Methylenedioxymethamphetamine. They argued that the phrase "substantially similar" was not adequately defined and they did not receive fair warning that their conduct was illegal. The court rejected the defendants' argument and held the federal analogue statute was not unconstitutionally vague. See 87 F.3d at 444.

Other federal Circuit Courts of Appeals have reached a similar conclusion. See *United States v. Turcotte*, 405 F.3d 515 (7th Cir. 2005); *United States v. Klecker*, 348 F.3d 69 (4th Cir. 2003); *United States v. Washam*, 312 F.3d 926 (8th Cir. 2002); *United States v. Fisher*, 289 F.3d 1329 (11th Cir. 2002).

A Louisiana state court has also held that the term "substantially similar" was not unconstitutionally vague, even when discussing complex chemical compounds. *State v. Beaudette*, 97 So. 3d 600, 603-04 (La. App. 2012). As in the case before us, Beaudette argued that the JWH compound he possessed was not substantially similar to a JWH-018, a scheduled controlled substance. The Louisiana court rejected the argument, holding:

"The statute at issue gives adequate notice to individuals that certain contemplated activity is proscribed and sets forth adequate standards for determining the guilt or innocence of the accused. Although the chemical makeup of the drugs are complex, if notice is clearly given that certain forms of synthetic marijuana are illegal, then it would be easily understood and adequate notice given that other substantially similar forms of synthetic marijuana are also illegal." 97 So. 3d at 604.

We find the cited decisions to be persuasive. K.S.A. 2010 Supp. 65-4105(d)(33) specifically identifies JWH-018 as a hallucinogenic substance prohibited by law. It is uncontroverted that Srack sold the potpourri laced with JWH-081 for human consumption. The controlling factual issue at trial was whether JWH-081 was "substantially similar" in structure and effect to JWH-018. We conclude that K.S.A. 2010 Supp. 21-36a01(b)(1) does impart fair warning to a person of ordinary intelligence that the sale of potpourri intended for human consumption with a substantially similar chemical structure and effect on the central nervous system as a schedule I controlled substance is prohibited by law. Accordingly, we hold the statutory definition of a controlled substance analog within K.S.A. 2010 Supp. 21-36a01(b)(1) to be consistent with the values under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and § 18 of the Kansas Constitution Bill of Rights and is not vague. Concluding that the statutory scheme is constitutional, we next consider Srack's challenge to the sufficiency of evidence presented to support the conviction.

*Sufficiency of Evidence*

Srack contends that the State failed to present sufficient proof that JWH-081 is substantially similar in chemical structure to JWH-018 or that JWH-081 has a hallucinogenic effect on the central nervous system substantially similar to that of JWH-018.

When the sufficiency of evidence is challenged in a criminal case, this court reviews such claims by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012).

In determining whether there is sufficient evidence to support a conviction, an appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

We find Srack's contention unpersuasive. Srack clearly intended the synthetic drug sold to the undercover agent to be smoked. Srack told the agent at the time of purchase that whoever would be using the potpourri needed to know what they were doing and that the Strawberry Cheesecake variety included in the purchase was three times stronger than the other potpourri. Moreover, he told a police investigator that JWH-081 was a receptor blocker that made users giggle, feel high, and laugh at things not funny. It is apparent Srack intended to sell a synthetic drug he believed mimicked many of the effects of marijuana on the user.

All three experts were in agreement that the chemical structure of JWH-081 and JWH-018 were almost identical. All three experts concluded JWH-081 and JWH-018 were structural analogs. Timothy Rohrig testified the two drugs were identical except for a single methoxy group in JWH-081.

The KBI chemist, Kaiser, and the toxicologist, Rohrig, both testified that JWH-081 and JWH-018 had a binding affinity with the cannabinoid receptor. Rohrig testified that JWH-081 had essentially the same, if not more potent, effects as JWH-018 on the human body, such as increased heart rate, increased blood pressure, palpitations, paranoia, hallucinations, sweating, dry mouth, and a "marijuana like high." Srack's expert, Marcu, disputed the hallucinogenic effect of JWH-081 primarily because of a dearth of scientific studies.

Srack's challenge to the sufficiency of the evidence is based entirely on the failure of the experts called by the State to use the magic words "substantially similar" when giving their respective opinions. However, as we have discussed, all of the experts at trial agreed to an almost identical chemical structure comparing JWH-018 and JWH-081.

Srack's argument is stronger regarding the sufficiency of the evidence to support a finding that the compounds were substantially similar in hallucinogenic effect. However, Srack has provided us

with no authority to support his argument. Moreover, Srack's own admissions, together with the testimony of Timothy Rohrig, presented credible evidence to support the jury's findings that the substances and their effects were substantially similar based on the instructions given. Whether the hallucinogenic effects were substantially similar was a question for the jury to resolve, and we conclude the evidence was sufficient to support the findings that the jury made.

*Exclusion of Evidence*

Srack claims the district court erred in excluding a letter written by the Saline County Attorney to the State Board of Pharmacy. Srack contends the letter was relevant evidence to prove the county attorney was contemplating dismissal of the criminal charges if JWH-081 was not named a scheduled controlled substance by the State Board of Pharmacy.

When reviewing a district court's decision concerning the admission of evidence, an appellate court first determines whether the evidence is relevant. Under K.S.A. 60-407(f), all relevant evidence is admissible unless statutorily prohibited. *State v. Riojas*, 288 Kan. 379, 382, 204 P.3d 578 (2009). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b).

There are two elements of relevant evidence: a materiality element and a probative element. *State v. Houston*, 289 Kan 252, 261-62, 213 P.3d 728 (2009). Evidence is probative if it has " 'any tendency in reason to prove' " a fact. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008). The issue of whether evidence is probative is reviewed under an abuse of discretion standard, whereas the materiality of evidence is reviewed de novo. *State v. Ultreras*, 296 Kan. 828, 857, 295 P.3d 1020 (2013): *State v. Berriozabal*, 291 Kan. 568, 586, 243 P.3d 352 (2010).

Srack argues the district court's decision to exclude evidence violated his due process right to present a complete defense. See *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). This right is violated when a court erroneously excludes relevant evidence that is an integral part of the theory of

the defense. *State v. Cooperwood*, 282 Kan. 572, Syl. ¶ 1, 147 P.3d 125 (2006).

In urging admission of the evidence, Srack's attorney asked the rhetorical question, "What's the need to have action taken on 81 to make it a controlled substance if the State can prosecute under the . . . theory of an analog?" Srack claims the evidence was relevant to support his defense that there was no objective study or proof that JWH-081 was substantially similar to JWH-018. Because the district court's ruling hampered his ability to present his defense and to establish reasonable doubt with the jury, Srack claims his right to a fair trial was violated. In passing, Srack claims the error was clearly harmful to the defense and cannot be considered harmless constitutional error.

We conclude the evidence Srack proffered was not material, and we need not reach the issue of legal relevancy. Testimony that the State was attempting to have JWH-081 listed as a scheduled controlled substance *after* Srack was arrested and charged does not have a legitimate bearing on Srack's case. See *State v. Stafford*, 296 Kan. 25, 43, 290 P.3d 562 (2012). If statutes were changed to list JWH-081 as a scheduled controlled substance, the change would not have affected Srack's charges or his defense. The fact the State Board of Pharmacy did not choose to list JWH-081 as a scheduled controlled substance also does not help Srack; the Board's decision did not indicate the compound was legal. Because the witness testimony would not have addressed Srack's charge and could not demonstrate JWH-081 was legal, the evidence was properly excluded.

Moreover, even if we were to assume the proffered evidence was relevant to establish a material fact, the error was harmless. Erroneous exclusion of evidence is subject to review for harmless error under K.S.A. 2010 Supp. 60-261. Factors an appellate court can consider in reviewing the erroneous exclusion of evidence for harmless error include: "the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise

permitted, and the overall strength of the case." *Ultreras*, 296 Kan. -828, Syl. ¶ 11.

As the State points out, Srack was able to elicit the testimony he wanted to present to the jury during the cross-examination of James Norton, a lieutenant with the Salina Police Department. Srack was able to show the jury that the State tried, and failed, to have JWH-081 listed as a scheduled controlled substance. No other testimony contradicted Norton's testimony, and additional testimony on the subject would have been cumulative. Despite Srack's claim that the exclusion of the evidence affected his constitutional right to present a defense, the district court's decision constituted harmless error. Srack was able to present his defense through cross-examination of Norton, and presentation of additional witness testimony regarding the State's attempt to have JWH-081 classified as a scheduled controlled substance would have been cumulative at best.

Affirmed.