NOT DESIGNATED FOR PUBLICATION

No. 125,156

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON M. GLEASON SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed February 2, 2024. Reversed and remanded.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, deputy district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.


PER CURIAM: A jury convicted Jason M. Gleason Sr. of one count of battery of a state corrections officer and he brings this appeal to challenge the validity of that conviction. Gleason claims that insufficient evidence, as well as errors in the jury instructions and erroneous statements uttered by the prosecutor, warrant reversal of his conviction. We are not persuaded that the first two issues, viewed independently, necessitate that outcome, but find the same cannot be said concerning the prosecutor's conduct. Rather, the State's repeated efforts to focus the jury's attention on the traumatic injuries Officer Spencer sustained during the overall melee triggered by Gleason, rather

1

than confining its efforts to the singular instance of criminal conduct that occurred—the physical contact Gleason made with Spencer at the outset of the incident—is considerably problematic. That approach created a very real risk that the foundational theory for the jury's guilty verdict was battery which resulted in bodily harm, rather than merely making physical contact in a rude, insulting, or angry manner. Given that a criminal conviction cannot be grounded in irrelevant evidence and a defendant may only be convicted of the crime charged or its lesser included offenses, the prosecutor's errors, standing alone, would warrant reversal of Gleason's conviction and remand for a new trial. But our analysis does not end there. Rather, the integrity of his conviction is further called into question when the instructional error is viewed in conjunction with the State's legal fallacies. Two sources are traditionally relied upon to ensure the jury has a proper understanding of its obligation. First, the purpose of the district court's instructions is to inform the jury concerning the elements of the crime charged in the complaint and to advise it regarding the possible verdicts in light of the evidence adduced. Next, the arguments and remarks of counsel are intended to aid the jury in understanding the evidence and how to apply the law. The deficiencies in Gleason's trial undermined those objectives and the result is a conviction of questionable validity. Accordingly, we reverse Gleason's battery conviction and remand his case for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

Hutchinson Correctional Facility Officers Austin Spencer and Edwin Towers were on duty and chatting with one another as they monitored the dining hall when inmate Jason Gleason Sr. approached them with his fists clenched by his sides. Gleason reached Spencer first and swung a punch at him while Spencer was not looking in his direction. Spencer caught sight of the movement and threw his left arm up to block the impact as he ducked. Gleason nevertheless managed to land a blow to Spencer's head and knock his glasses to the floor.

Gleason targeted Towers next giving rise to a brief scuffle between them. Other officers eventually arrived and attempted to subdue Gleason, but he managed to jump up, flee, and hurl a table at the pursuing officers in an effort to slow their advance. Towers succeeded in grabbing Gleason around the waist and bringing him back to the ground. Spencer launched himself in their direction to assist Towers, but flew over the two men and collided, headfirst, with a dining hall bench. He received a large indentation in his forehead for his efforts but promptly returned to his feet and supported his fellow officers in restraining Gleason.

Spencer sought medical treatment for the injuries he received when he collided with the bench and was diagnosed with a traumatic brain injury and skull fracture which required the insertion of plates and screws into his head. The injury also stripped him of any detailed memories concerning Gleason's initial attack and the punch he sustained to his head.

The State charged Gleason with three counts of battery against a state corrections officer, under the theory that he caused physical contact with Officers Spencer, Jack McLaurine, and Towers in a rude, insulting, or angry manner. It ultimately dismissed the latter two charges and opted to proceed solely with the count involving Spencer. Following a brief trial, the jury returned a guilty verdict, and the court sentenced him to serve 130 months' imprisonment.

Gleason now brings the matter to our court to analyze whether his trial was tainted by errors that require reversal of his conviction.

*When the evidence adduced at trial is reviewed in a light most favorable to the State, as required by our standard of review, it is sufficient to sustain Gleason's conviction for battery of a corrections officer.*

For his first claim of error, Gleason contends the State failed to bring forth sufficient evidence to demonstrate that he made physical contact with Spencer as required to support his battery conviction. The State asserts that it sustained its burden by introducing video and photographic evidence at trial which captured the incident as it occurred that day.

When the sufficiency of the evidence supporting a criminal conviction is challenged, appellate courts review "'the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). While reviewing the evidence, we specifically will not "reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 (2016). Overturning a conviction for insufficient evidence "is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

"'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.' [Citation omitted.]" *Potts*, 304 Kan. at 694. It is not necessary that circumstantial evidence exclude every other reasonable conclusion to be considered sufficient. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021).

4

In order to sustain a conviction for battery of a state corrections officer in this case, the State was required to prove that Gleason knowingly caused physical contact with Spencer, a state corrections officer, in a rude, insulting, or angry manner, while Spencer was engaged in the performance of his duties as an officer. K.S.A. 2019 Supp. 21-5413(a)(2), (c)(3)(A). Again, Gleason's challenge targets the State's evidence as deficient with respect to its obligation to prove that he made "physical contact" with Spencer when he swung his fist at him.

In conducting a thorough analysis of the evidence, we had the opportunity to review the video from the dining hall that the State played for the jury, which provided a view of the incident from various angles due to the existence of multiple security cameras in that area. The record also contains still images captured from that video. While the resolution of those photographs falls short of exceptional, they nevertheless arguably evidence that Gleason accomplished his goal to land a punch to Spencer's head. The question before us is simply whether a reasonable juror could conclude from the evidence that Gleason committed the act alleged, and we conclude the answer to that inquiry is an affirmative one. We are satisfied the evidence sufficiently demonstrates that Gleason made physical contact with Spencer's head and conceivably also made contact with him when Spencer raised his hand to block Gleason's attack. Finally, the conclusion we extrapolate from those images is buttressed by the existence of an injury Spencer sustained to the bridge of his nose, which a reasonable juror could find occurred when his glasses came off during that initial scuffle.

In seeking to overturn his conviction, Gleason outlines the testimonial evidence from trial and asserts it amounts to a failure by the State to present any evidence of physical contact through the accounts provided by those witnesses. Essentially, this is a thinly veiled request for us to step into the shoes of the jurors and reweigh that testimony. This we cannot do. A thorough review of the entirety of the evidence submitted at trial

5

leaves us satisfied that it was sufficient to sustain Gleason's conviction for battery of a state corrections officer.

*The district court erred in issuing a jury instruction that failed to require the jury to weigh whether the physical contact Gleason allegedly committed was carried out in a rude, insulting, or angry manner, but such error was harmless.*

Gleason next contends the district court neglected to issue a jury instruction that included every element for the charged crime, resulting in a violation of his federal and state constitutional rights to a jury trial. The State responds that while the instruction was erroneous, Gleason fails to establish clear error occurred as required to overturn his conviction under the facts and circumstances of this case.

We review claims of instructional error in multiple steps. First, we must consider jurisdiction and determine whether the issue is preserved. Then we move on to an analysis of whether the instruction was both legally and factually appropriate. The final step is to review any error we identify for harmlessness. The standard applied in this final step varies somewhat dependent upon its context and whether the claim was properly preserved. *State v. Martinez*, 317 Kan. 151, 162, 527 P.3d 531 (2023). It is without question that the trial court has the duty to inform the jury of every essential element of the crime that is charged. See *State v. Crawford*, 247 Kan. 223, 227, 795 P.2d 401 (1990). But even when the allegation charges that an element of a crime was omitted, our Supreme Court has turned to the harmless error analysis and analyzed whether the omitted element was uncontested and supported by such overwhelming evidence that the jury verdict would have been the same without the omission. *State v. Richardson*, 290 Kan. 176, 182-83, 224 P.3d 553 (2010); see also *State v. Daniels*, 278 Kan. 53, 62, 91 P.3d 1147 (2004) (citing *Neder v. United States*, 527 U.S. 1, 4, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999], holding that the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967], applies to a jury instruction that omits an element of an offense).

6

Gleason concedes that he did not object to the challenged instruction at trial except for an aspect of the instruction that was removed and is not at issue in this appeal. The State acknowledges that the instruction should have included the words "'in a rude, insulting, or angry manner'" and that its absence rendered the instruction legally inappropriate. Because of Gleason's failure to object, we will proceed with a harmlessness analysis through the lens provided by *Richardson.* That is, whether the emotion underlying Gleason's conduct "was uncontested and supported by such overwhelming evidence that the verdict would have been the same" had that element been included in the instruction. 290 Kan. at 182-83.

As discussed above, it was alleged that Gleason battered Spencer in violation of K.S.A. 2019 Supp. 21-5413(a)(2), (c)(3)(A). The court instructed the jury as follows:

"In Count One, Jason Gleason is charged with the crime of battery against a state correctional officer. Jason Gleason pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Jason Gleason knowingly caused physical contact with Austin Spencer.

"2. Jason Gleason was in the custody of the secretary of corrections.

"3. Austin Spencer was a state correctional officer.

"4. Austin Spencer was engaged in the performance of his duty.

"5. This act occurred on or about the 27th day of August 2019, in Reno County, Kansas.

"The state must prove that the defendant committed the crime knowingly.

"A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the state."

The record before us reflects that the aggressive or belligerent nature of Gleason's contact was never a contested issue at trial. Rather, Gleason's defense focused solely on the absence of *any* physical contact at all. He argued to the jury that if he was "guilty of anything in this case it would be attempted battery of a law enforcement officer as you can see in the video." Counsel then elaborated:

7

"The biggest contention that is the Defense has in this matter is that Mr. Gleason did not make physical contact with, with the officers in this case. You heard from several officers, including Officer Towers, who testified that, that Mr. Gleason attempted to try to contact—have contact with them. He didn't know if it actually occurred."

Turning to the video, we are satisfied it is evident that the punch Gleason threw at Spencer was borne of ill feelings and intended to be "rude, insulting or angry." See K.S.A. 2019 Supp. 21-5413(a)(2), (c)(3)(A). To be sure, the recording captured Gleason as he rapidly approached Spencer and Towers, from Spencer's blindside, with his fists clenched at his sides. He then turned directly toward the officers and lashed out at Spencer while Spencer's attention was focused elsewhere. Spencer threw his arm up to try and deflect the blow and his glasses landed on the ground as a product of his fracas with Gleason. Gleason swung at Towers next and then attempted to flee across the dining hall, throwing a table at one point to stymie the officers' efforts to apprehend him. In our view, it is clear from the video that this was an unprovoked, hostile act that is undeniably rude or angry in nature. That is, it does not lend itself to an interpretation that Gleason's conduct was innocuous or otherwise undertaken as participation in harmless, jovial horseplay.

Gleason's jury had the opportunity to acquit him based on his allegation that there was no physical contact, but it chose not to, nor did it view his actions as merely an attempted battery. Rather, its verdict seemingly reflects a finding that Gleason made physical contact with Spencer. Accordingly, we are satisfied "the omitted element was uncontested and supported by such overwhelming evidence that the jury verdict would have been the same" had the court specifically instructed that the jury was required to assess whether the alleged physical contact was made in a rude, insulting, or angry manner. *Richardson*, 290 Kan. at 182.

8

Gleason also urges us to find that this issue necessitates reversal because it amounts to a structural error that violated his state and federal constitutional rights. To support his claim, he directs our attention to the Mississippi Supreme Court's interpretation of its constitution as a guide because it contains language similar to that of the Kansas Constitution. See *Harrell v. State of Mississippi*, 134 So. 3d 266, 275 (Miss. 2014). The *Harrell* court held that the omission of an element from an instruction is the functional equivalent of placing a decision regarding the sufficiency of the evidence against a defendant with the court, rather than a jury, in violation of their state constitution's "inviolate" right to a jury trial. 134 So. 3d at 274. But, as discussed above, that is not precisely on par with the standard the Kansas Supreme Court utilizes when the instructional error is that of a missing element. See *Richardson*, 290 Kan. at 182-83 (utilizing a harmless error type framework when jury instruction is missing an element). This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Gleason has not identified any such indication.

We agree with the parties' assertion that the instruction was legally erroneous but conclude it was harmless under *Richardson*. This issue does not independently entitle Gleason to a reversal of his conviction for battering Officer Spencer.

*The prosecutor committed reversible error during closing arguments when he focused too heavily on the traumatic head injuries Spencer sustained, encouraged the jury to use that evidence for an irrelevant and unlawful purpose, and created a risk that it would convict Gleason of an offense with which he was not, and could not be, charged.*

Gleason's next contention of error consists of a claim that the prosecutor essentially misstated the law during his opening and closing remarks when he went beyond the scope of the complaint and focused the jury's attention on the extensive injuries Spencer suffered during his attempted apprehension of Gleason, rather than confine his statements to the actual physical contact Gleason perpetrated against Spencer.

9

He asserts an additional error occurred when the prosecutor told the jury that Gleason was guilty of *aggravated* battery. The State responds that the comments fell within the wide latitude prosecutors are afforded during closing arguments and, in part, were only uttered for the purpose of countering Gleason's argument that there was "no evidence" of physical contact.

Prosecutorial error claims are fact specific, and outcomes depend on the particulars of each case. *State v. Thomas*, 311 Kan. 905, 911, 468 P.3d 323 (2020). We review such claims using a two-step process that requires an assessment of whether error occurred and, if so, whether the defendant suffered prejudice as a result. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022). Under the first step we examine whether the challenged conduct or statements fell outside the wide latitude afforded prosecutors to pursue the State's case and sought to obtain a conviction through means that offended the defendant's right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). The wide latitude the State enjoys in arguing its case extends to opening and closing remarks alike and, in determining whether a particular comment exceeds proper boundaries, a reviewing court considers it in the context in which it was made, rather than analyzing it in isolation. *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020). Misstating the law falls well outside this latitude. *State v. Becker*, 311 Kan. 176, 182, 459 P.3d 173 (2020).

If we determine that error occurred, we next consider whether that error "prejudiced the defendant's due process rights to a fair trial." *Sherman*, 305 Kan. at 109. In evaluating potential prejudice, we apply the traditional constitutional harmlessness inquiry. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021). A prosecutorial error is harmless if we are ultimately convinced beyond a reasonable doubt, following a thorough review of the entire record, "that the error did not affect the outcome of the trial." 312

10

Kan. at 792. Or stated another way, that "there is no reasonable possibility that the error contributed to the verdict." 312 Kan. at 792.

Before delving into the analysis, a brief recap is important to establish the necessary context. The record reflects that Gleason was charged with battery in violation of K.S.A. 2019 Supp. 21-5413(c)(3)(A), under the theory that he perpetrated offensive physical contact against Officer Spencer in a rude, insulting, or angry manner. The precise language of the complaint consisted of the following:

> "That on or about the 27th day of August, 2019, in Reno County, Kansas, JASON M GLEASON SR, while in the custody of the secretary of corrections, then and there being present did unlawfully, feloniously and knowingly *cause physical contact* in a rude, insulting or angry manner to Austin T Spencer, a state correctional officer or employee, while such officer or employee was engaged in the performance of such officer's or employee's duty." (Emphasis added.)

At trial, the court issued a largely corresponding instruction which stated that the jury could convict Gleason if it found the State proved each of the following claims:

> "1. Jason Gleason knowingly *caused physical contact* with Austin Spencer.
> "2. Jason Gleason was in the custody of the secretary of corrections.
> "3. Austin Spencer was a state correctional officer.
> "4. Austin Spencer was engaged in the performance of his duty.
> "5. This act occurred on or about the 27th day of August 2019, in Reno County, Kansas.
> "The state must prove that the defendant committed the crime knowingly.
> "A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the state." (Emphasis added.)

Additional preliminary information that is equally important is an overview of a few of the analytical tools that play a compulsory role in our analysis. We are mindful that opening statements are intended to afford prosecutors the opportunity to acquaint the

11

jury with the evidence it plans to introduce and the criminal offense it will endeavor to prove. See *State v. Love*, 305 Kan. 716, 728, 387 P.3d 820 (2017) (The opening statement has a narrow purpose and scope and is given only to assist the jury in understanding what each side expects its evidence to establish and to advise the jury what questions will be presented for its decision.). In a somewhat similar vein, closing arguments enable the prosecutor to provide the jury with a condensed, logically assembled summation of the evidence introduced which demonstrates how, when viewed in conjunction with the controlling law, the State established a defendant's guilt beyond a reasonable doubt. See *State v. Whiters*, 206 Kan. 770, 773, 481 P.2d 992 (1971) (The primary purpose of closing argument is to enlighten the jury so it may render a correct verdict.); *State v. Genzel*, No. 120,602, 2020 WL 3481499, at *4 (Kan. App. 2020) (unpublished opinion) (The proper purpose of a closing argument is to afford the lawyers the opportunity to discuss how the jurors should evaluate the evidence and how that evidence guides their application of the law in the district court's written instructions to reach a verdict.).

With those principles as our backdrop, we turn to Gleason's contentions. The first question he asks us to resolve is whether statements made during the prosecutor's opening and closing remarks impermissibly focused the jury's attention on the bodily harm Spencer sustained after colliding with the bench. As support for his claim that the challenged remarks constitute error, Gleason first directs our attention to the following italicized portion of the prosecutor's opening statement:

> "This afternoon you're going [to] hear from several witnesses and what the State expects the evidence to show is that on August 27th, 2019, while Mr. Gleason was in the custody of the secretary of corrections he knowingly caused physical contact in a rude angry and insulting manner with Austin Spencer, who was a corrections officer in the performance of his official duty during that time. What you will see and hear from the witnesses is during lunch in the chow hall in the Hutchinson Correctional Facility Mr. Gleason finished eating. He put his tray away. He marched up to Austin Spencer, who was standing with another corrections officer, Edwin Towers. While talking with Edwin

12

Towers, Mr. Gleason swung at Mr. Spencer striking him and then taking off running through the chow hall as officers attempted to gather Mr. Gleason up because of what he had just done. There will be a couple other officers who responded who helped take Mr. Gleason into custody at that time, but you will hear from officers who were directly involved. You will hear from some officers that investigate the incident and there's surveillance video that shows what happened. *Austin Spencer, when he was trying to take Mr. Gleason to the ground, collided with a metal table in the chow hall which caused great damage to his forehead, and you will hear the injuries he sustained from that, and at the conclusion of this case the State will ask you to find Mr. Gleason guilty of battery on a state's corrections officer with regard to Austin Spencer. Thank you.*" (Emphasis added.)

Gleason buttresses his claim of error with a segment of the State's rebuttal closing that he asserts is indicative of another instance where the prosecutor erroneously assigned legal significance to Spencer's head injuries:

"The injuries were the proximate cause of Jason Gleason's actions. He is the one who you watched swing at Austin Spencer. They go around the table because he won't listen to what their commands are. Mr. Gleason did attack Austin Spencer. You can watch it. It happened. You have to determine whether or not he caused physical contact with Austin Spencer. The State would leave you with this one statement that when Austin Spencer received this injury, did you hear Edwin Towers talk about how it looked like a perfect impression of the seat he collided with in his head it made a dent line in his head. If you look at that and put his head right there, that's where that injury came from. This one is on the bridge of the nose where his glasses were. That injury happened probably when he got struck by Mr. Gleason. None of Austin Spencer's injuries would have happened had Jason Gleason not attacked him. It sounds like they're not arguing Jason Gleason is innocent, that he did attack him. Mr. Bravi said he attempted to strike Mr. Spencer. Mr. Gleason is guilty of aggravated battery of Officer Spencer. And you can take this video back and watch it from each one of the angles of that camera. You'll be able to watch it. Up here in the top corner you will be able to see his approach in the other corner. Ladies and Gentlemen, that's battery of a law enforcement or state corrections officer. Thank you."

13

It is Gleason's position that the remarks set out above amounted to a misstatement of the law because they paved the way for the jury to impermissibly convict him of battery based on bodily harm, rather than physical contact, which was the only criminal conduct that occurred during the entire course of events. Following a thorough review of the parties' opening and closing statements, we agree and find that the State's multiple references to Spencer's traumatic head injuries gave rise to a dual pronged error.

First, the prosecutor essentially informed the jury that it could look to the evidence concerning Spencer's head injuries to find that Gleason perpetrated unlawful physical contact against Spencer and encouraged them to do the same. Returning to the prosecutor's opening statement we note that he informed the jury that Spencer sustained "great damage to his forehead" as he attempted "to take Mr. Gleason to the ground" and that the jury would "hear" evidence about those injuries after which it would be asked "to find Mr. Gleason guilty of battery on a state's corrections officer." That is, the final portion of the trial roadmap the jury received informed them that they would hear evidence concerning the bodily harm Spencer suffered, which was evidence it could then use to determine whether Gleason was guilty beyond a reasonable doubt of making unlawful physical contact with Spencer. The punch or physical blow that gave rise to the charge received merely a passing reference in the overall summary of the incident while Spencer's collision with the table and his corresponding injuries were directly linked to the State's request for the jury to return a guilty verdict for battery.

The State's rebuttal closing included a manifestation of the same misstep as reflected in the phrases that again intimated the physical contact and substantial head injuries were related. That is, immediately on the heels of the State's reminder to the jury of its obligation to determine whether Gleason was guilty of battery, the prosecutor "[left it] with this one statement that when Austin Spencer received this injury," it was the result of his collision with the bench as evidenced by the nature of the dent in his forehead.

14

Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b); *State v. Srack*, 49 Kan. App. 2d 761, 772, 314 P.3d 890 (2013). Both manners of presentation were misleading given that any evidence concerning the injuries Spencer suffered after colliding with the bench during the apprehension of Gleason, several moments after the initial punch giving rise to the criminal charge was thrown, is wholly irrelevant to establishing whether that hit constituted physical contact. We recognize that the opening blow Gleason delivered to Spencer's head set off a series of events which ultimately culminated in Spencer's collision with the bench and remarkable head injuries. But to sustain a conviction for unlawful physical contact, the jury needed to hear evidence that Gleason made physical contact with Spencer in some way, and that was not the State's focus when addressing the jury at the outset and conclusion of its case. The injuries that Spencer sustained when Gleason was finally apprehended have no bearing on the question of whether Gleason committed the initial act, and it was erroneous for the prosecutor to inform the jury it could apply the evidence in such a way to ultimately find Gleason guilty.

The prosecutor was seemingly attempting to persuade the jury that but-for the initial blow Gleason struck, Spencer's injuries would not have occurred. But the legal accuracy of that assertion is questionable. The State was simply required to prove beyond a reasonable doubt whether Gleason made physical contact with Spencer in a rude, insulting, or angry manner. The head injuries Spencer sustained did not provide the foundation for the physical contact alleged in the complaint and were wholly irrelevant to the resolution of that inquiry. Stated another way, the fact Spencer injured himself when he crashed into the table while attempting to assist with Gleason's apprehension does not make it any more or less true that Gleason had physical contact with Spencer when Gleason first attacked him. In short, the prosecutor fell short in his duty to accurately inform the jury how to analyze the facts under the controlling law.

15

Additionally, and perhaps the greater cause for concern, is that the prosecutor's statements created the risk that Gleason was convicted of battery under a theory for which he was not charged and could not even be charged under the law. The charging document sets out the specific offense alleged so that a defendant is precisely informed of the nature of the accusation against him or her. That notice then allows for development of the best defense to meet that accusation and, ideally, insulate the defendant from the risk of a conviction based on facts not contemplated in the accusation. *State v. Phillips*, 312 Kan. 643, 668, 479 P.3d 176 (2021). Accordingly, the State is bound by the wording it chooses to rely on in its complaint. *State v. McClelland*, 301 Kan. 815, Syl. ¶ 4, 347 P.3d 211 (2015).

The State specifically charged Gleason with battery under the physical contact theory. But the statements it employed when acquainting the jury with its case and then summarizing the same at the conclusion of trial failed to protect Gleason from the risk the charging document is designed, in part, to eliminate. Again, the prosecutor's assertions during his opening statements indicated that Spencer sustained "great damage to his forehead" when he attempted "to take Mr. Gleason to the ground" and following receipt of the evidence concerning those injuries the jury would be asked "to find Mr. Gleason guilty of battery on a state's corrections officer." Such statements are more akin to those articulated when conviction for battery under the theory that bodily harm occurred is an available option, rather than mere physical contact.

The State's closing remarks are similarly problematic. After reminding the jurors that their role was to determine whether Gleason was guilty of battery, the prosecutor focused their attention on Spencer's injuries by "[leaving them] with this one statement," that the seat Spencer collided with left a corresponding indentation in his forehead, and that "[n]one of Austin Spencer's injuries would have happened had Jason Gleason not attacked him." Highlighting the evidence in that way arguably communicates to the jury

16

that there is no stronger evidence of Gleason's culpability for physical contact than that which depicts Spencer's injuries.

Both sets of statements gave rise to legally flawed opening and closing remarks that failed to assist the jury in understanding how they are to properly analyze the facts in light of the law they were given. The wording of the State's complaint was limited to "physical contact." Thus, that is the theory it committed itself to for trial. See *State v. Haberlein*, 296 Kan. 195, 210, 290 P.3d 640 (2012) ("The State is bound by the wording of its complaint and limits itself to pursue only that 'version of the offense' or 'theory' of the case at trial."). The boundaries erected by virtue of that complaint were not honored here.

In *State v. O'Connor*, No. 118,519, 2019 WL 1868327 (Kan. App. 2019) (unpublished opinion), a panel of this court addressed a similar situation in the context of lesser included offense instructions and their conclusion provides some measure of guidance when resolving the issue before us. In that case, O'Connor was charged with the aggravated battery of her boyfriend under the theory that she caused "physical contact with another person, to-wit [T.C.], when done in a rude, insulting or angry manner with a deadly weapon or in any manner whereby great bodily harm, disfigurement or death can be inflicted." 2019 WL 1868327, at *2. Over O'Connor's objection, the trial court instructed the jury that it could convict O'Connor under any of the four theories of aggravated battery, or the lesser offense of battery. The jury ultimately convicted O'Connor of aggravated battery upon finding that she "'recklessly caused bodily harm to [T.C.] in a manner whereby great bodily harm, disfigurement or death can be inflicted.'" 2019 WL 1868327, at *2.

O'Connor appealed and argued the lesser included instruction was legally inappropriate because it improperly expanded the possible actus reus to include the uncharged act of causing bodily harm when the complaint only alleged that she caused

17

physical contact with T.C. The reviewing panel found O'Connor's argument persuasive and concluded the district court committed reversible error in issuing the instruction because "'[a] jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous.'" 2019 WL 1868327, at *5, 7 (quoting *McClelland*, 301 Kan. at 828). In so finding it noted that the State "boxed itself into" proving O'Connor committed aggravated battery under the theory of physical contact "because it limited itself accordingly in the complaint." 2019 WL 1868327, at *5.

Our Supreme Court reached a similar conclusion in *State v. Charles*, 304 Kan. 158, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017). In that case, the State charged Charles with aggravated battery under the theory that he "'intentionally cause[d] bodily harm to another person . . . with a deadly weapon, to-wit: 1995 Nissan Pathfinder.'" 304 Kan. at 162. The trial court opted to go one step further, however, and instructed the jury it could convict Charles of reckless aggravated battery if it found he "'recklessly caused bodily harm to another person with a deadly weapon, to-wit:  a car, *or in any manner whereby great bodily harm, disfigurement or death can be inflicted*.'" 304 Kan. at 162. The jury returned a guilty verdict based on this additional theory.

Charles appealed and argued the instruction was erroneous because it was broader than the specific allegations the State chose to rely on in its complaint. The Supreme Court agreed and found the district judge erred by issuing an instruction that was neither legally nor factually appropriate. Rather, it expanded the lesser included instruction to enable the jury to return a guilty verdict if it found that Charles inflicted bodily harm on the victim "in *any manner* whereby great bodily harm, disfigurement, or death can be inflicted," instead of confining its deliberations to the specific allegation charged, that bodily harm was inflicted with an SUV. (Emphasis added.) 304 Kan. at 168-69.

18

It is for very similar reasons that we determine the State committed error here. While the prosecutor serves a distinctly different role and is not vested with the duty of formally instructing the jury, he nevertheless carried the obligation to aid the jury in understanding how it should apply the law to the facts of the case. When he encouraged the jury to analyze the evidence through a lens that was not legally available to them, he failed to fulfill that obligation.

Notably, it is not simply that the State essentially argued a theory that was not charged; the error is compounded by the fact that the chosen theory is not one that is even available under the facts of this case. As mentioned briefly in the analysis concerning the relevancy error, the evidence fails to establish a connection between Gleason striking Spencer and the injuries Spencer sustained several moments later as he attempted to assist his colleagues when they finally managed to restrain Gleason. *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), offers a helpful analog. In that case, Hobbs punched a man who was simply trying to help him calm down outside a bar. The man immediately lost consciousness and struck his head on the bumper of a car as he collapsed, which left him with a significant head injury. The State charged Hobbs with aggravated battery under the theory that he knowingly caused great bodily harm. On appeal, our Supreme Court found sufficient evidence to sustain the conviction and support the existence of knowing conduct because Hobbs knew that some type of great bodily injury "was reasonably certain to result from the punch, even if he did not anticipate [the victim's] precise injury." 301 Kan. at 212. Using *Hobbs* as a backdrop, if the State in this case were to charge Gleason with battery for the infliction of bodily injury, it would have the burden to prove that Spencer's traumatic head injuries resulted from the initial blow Gleason struck or that the punch he delivered created a substantial risk that the resulting particular head injury would occur. However, the strike and the injury are too attenuated here as it is not one where Spencer simply fell and struck his head in direct response to Gleason's initial blow.

19

Given that we have determined the statements at issue are erroneous, our next step is to ascertain whether that error prejudiced Gleason's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*. That is, an instance of prosecutorial error is deemed harmless when the State demonstrates "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109. The statutory harmlessness test also applies to prosecutorial error issues, but when "'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.'" 305 Kan. at 109.

The State attempts to mitigate the effect of its remarks by asserting that they were made in response to defense counsel's closing arguments and, therefore, "both parties" are guilty of discussing Spencer's injuries. "[A] prosecutor commits [error] by making an improper argument, even if the improper argument is made in response to arguments or statements by defense counsel. The open-the-door rule does not insulate a prosecutor from a finding of [error]." *State v. Marshall*, 294 Kan. 850, 860, 281 P.3d 1112 (2012); see also *State v. Stimec*, 297 Kan. 126, 130, 298 P.3d 354 (2013). Again, it is not the mere utterance of the occurrence of Spencer's injuries that gives us cause for concern. It is the manner in which the State encouraged the jury to use that information—that those injuries established Gleason was guilty of physical contact.

The video and photographic evidence introduced by the State to establish physical contact was sufficient to sustain Gleason's conviction on evidentiary grounds, but it was not overwhelming, or even necessarily strong enough to overcome a constitutional deficiency. The video depicts the incident to some degree but requires the viewer to surmise, based on body language, that the actual impact occurred. Spencer's later brain trauma robbed him of the ability to recall the specifics of the events, and the other officers present were likewise unable to affirmatively and unequivocally state that

20

physical contact occurred. Thus, given the repetitive nature of the prosecutor's statements and the use of the evidence he advocated for, one cannot definitively say whether the jury concluded Gleason was guilty under the theory of physical contact or bodily harm. A questionable verdict cannot be permitted to stand.

Gleason also argues that prosecutorial error occurred when the prosecutor stated during its rebuttal closing argument that "Gleason is guilty of aggravated battery of Officer Spencer." The State tacitly concedes that his statement was an accidental misstatement of the crime charged, thereby resulting in an error. Because this statement was undeniably an error, we next consider whether it prejudiced Gleason's right to a fair trial. See *Sieg*, 315 Kan. at 535.

The statement must be analyzed in conjunction with the instructions given and in so doing, we find no room for prejudice on this particular claim. The jury was only instructed on battery of a state corrections officer and a corresponding instruction for merely attempting to commit the same offense. Thus, the jury was never placed in a position to afford the prosecutor's misstatement any weight.

*Cumulative error deprived Gleason of his right to a fair trial.*

Finally, Gleason argues that cumulative error deprived him of a fair trial. "Cumulative error analysis aggregates all errors and assesses whether their cumulative effect is such that they cannot be determined to be harmless, even though individually those errors are harmless." *State v. Carr*, 314 Kan. 615, 721, 502 P.3d 546 (2022). Cumulative errors may require reversal when the totality of the circumstances establishes that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during trial, appellate courts examine the errors in context, consider how they were dealt with, the nature and number of errors and whether they were interrelated, and the strength of the evidence. If any of the errors being

aggregated are constitutional, the party benefiting from the error must establish beyond a reasonable doubt that the cumulative effect did not affect the outcome. *State v. Alfaro-Valleda*, 314 Kan. 526, 551-52, 502 P.3d 66 (2022).

We have identified two errors in Gleason's trial and considering those errors in the aggregate we find Gleason was denied a fair trial. To explain our conclusion, we return to the evidence elicited at trial. Unfortunately, the nature of Spencer's traumatic injuries left him with no memory of the incident. Officer Towers, the colleague with whom Spencer was chatting when Gleason initiated his attack, also could not testify with certainty whether Gleason succeeded in making physical contact with Spencer. The video and still photos that captured the incident, however, reveal that Spencer raised his arm and ducked as Gleason swung his fist at his head and allows for the interpretation by a reasonable juror that contact was made. Finally, evidence was admitted that Spencer suffered a minor laceration to his nose and his glasses ended up on the floor, both of which arguably indicate Gleason landed the initial punch he intended to deliver. While we concluded that Gleason's instructional challenge could not meet the clearly erroneous standard given the sufficiency of this collective evidence, we find the instruction strains the bounds of fairness when considered in conjunction with the prosecutor's legally infirm statements concerning the significance of the bodily harm Spencer ultimately suffered.

Had the elements for the battery instruction properly informed the jurors that the physical contact must be committed in a rude, insulting, or angry manner, they would have focused on the punch Gleason threw at Spencer, thereby lessening the likelihood they would afford the prosecutor's discussion of Spencer's head injury any consideration when arriving at a verdict. Without that safeguard, however, the instructional error intensified the impact of the prosecutor's improper statements. The combined effect of those errors substantially exceeded the adverse effect of either alone. See *State v. Conaway*, No. 121,848, 2021 WL 4704029, at *7 (Kan. App. 2021) (unpublished opinion) (instructional error on culpable mental state combined with prosecutor's

22

misstatements about criminal intent had "synergistic effect" depriving defendant of fair trial).

A defendant is entitled to a fair trial, and where Gleason's jury was not accurately instructed or appropriately advised as to the law controlling the case they were called upon to analyze, we cannot confidently state that fairness ideal was achieved.

Reversed and remanded.